**UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Case No. 22-03458** |
| | ) | |
| **BASHKIM ARIFI and** | ) | **Hon. David D. Cleary** |
| **FATIMA ARIFI** | ) | |
| Debtors. | ) | **Chapter 11 (Subchapter V Small Business)** |

**SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION**

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of Debtor and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions appears at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY _____.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE FILED WITH THE COURT BY _____, 2022, EITHER ELECTRONICALLY ON THE COURT'S WEBSITE AT www.ilnb.uscourts.gov, OR BY MAILING IT TO THE COURT AT THE FOLLOWING ADDRESS:**

> **Clerk, U.S. Bankruptcy Court
> 219 S. Dearborn St., 7th Floor
> Chicago, IL 60604**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR:_____ AND WILL BE CONDUCTED ELECTRONICALLY USING ZOOM FOR GOVERNMENT AT** https://zoomgov.com/; **THE MEETING ID IS _____ AND THE PASSCODE IS _____.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

**December 13, 2022
Richard N. Golding
The Golding Law Offices, P.C.
500 N. Dearborn St., 2nd Floor
Chicago, IL 60654
(312) 832-7885**

B.      Priority Tax Claims – NONE

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief. ***There are no Priority Tax Claims in this case.***

### 2.2     Classes of Claims and Equity Interests.

A. Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code.

**Class 1 – Huntington National Bank Allowed Secured Claim.** The only class of secured claims in this case is Class 1, the allowed secured claim of Huntington National Bank. Pursuant to the Subchapter V provisions applicable to mortgages granted to secure business debt on a residence, Debtors propose, pursuant to section 1190(2) and (3) of the Bankruptcy Code, the following treatment of Huntington's claim:

As adequate protection, Debtors shall pay to Huntington National Bank monthly, from the Confirmation Date through the date that Huntington receives the net proceeds of the sale of Debtors' residence, interest only at the rate of 5.0% per annum on the current sale value of Debtors' residence as of the date of confirmation, less the value of accrued real estate taxes that are senior to Huntington's mortgage.

Within 30 days after Confirmation of the Plan, Debtors shall have sold their residence, pursuant to the terms of this Plan, to their son Betim Arifi and their daughter-in-law Shkqesa Arifi (the "Buyers"), for a purchase price of $630,000. The Buyers will obtain a mortgage in the amount of $425,000. The proceeds of the mortgage, less closing costs and an agreed carve-out amount for the payment of fees to the Trustee (the "Net Proceeds"), shall be paid to Huntington National Bank at the closing of the sale (the "Closing"), together with the proceeds of the Third Party Notes and the assignment of the Buyers' Note, each as defined below, in exchange for the release of Huntington National Bank's lien on the residence.

8

Within 30 days after Confirmation of the Plan, Debtors shall have sold their residence, pursuant to the terms of this Plan, to their son Betim Arifi and their daughter-in-law Shkqesa Arifi (the "Buyers"), for a purchase price of $630,000. The Buyers will obtain a mortgage in the amount of $425,000. The proceeds of the mortgage, less closing costs and an agreed carve-out amount for the payment of fees to the Trustee (the "Net Proceeds"), shall be paid to Huntington National Bank at the closing of the sale (the "Closing"), together with the proceeds of the Third Party Notes and the assignment of the Buyers' Note, each as defined below, in exchange for the release of Huntington National Bank's lien on the residence. The sale of the residence shall be free and clear of all liens, claims, and encumbrances, including the lien held by Huntington National Bank. The difference between the purchase price and the amount of the Buyers' mortgage shall be paid by the Buyers to Debtors in the form of a non-negotiable promissory note in the amount of such difference (the "Buyers' Note"), such note to be payable, without interest, in five equal annual installments commencing on the fifth anniversary of the Closing. The Buyers' Note shall be assigned to Huntington National Bank at the Closing. Notwithstanding such assignment, the Debtors shall retain the right to forgive the Buyers' Note, or any portion thereof. In addition, the Debtors will pay to Huntington National Bank at the Closing the proceeds of an $75,000 loan to be made to the Debtors by third parties, to be evidenced by Debtors' promissory notes to said third parties in that aggregate amount (the "Third Party Notes"). The Third Party Notes shall not become due and payable until the fifth anniversary of Confirmation and shall bear no interest until after the completion of Debtors' payments required by the plan.

Payments.

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Trustee pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c), the Debtors shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

### 2.6.    Post-Confirmation Management – Not Applicable

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|------|----------|--------------|
| N/A | N/A | N/A |
|  |  |  |

### 2.7.    Tax Consequences of the Plan.

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect*

*Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

Debtor does not anticipate tax consequences as a result of this plan as any debt forgiven will not be considered income to the Debtor under the applicable provisions of the Internal Revenue Code.

### 2.8. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan

Debtor has provided projected financial information for the first three years of the Plan. Those projections are listed in Exhibit 1. The financial projections for the remaining two years are similar to the information provided for the third year of the Plan.

### ARTICLE 3
### FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1.   Ability to Initially Fund Plan.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as Exhibit 2.

### 3.2.   Ability to Make Future Plan Payments And Operate Without Further Reorganization.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtors have provided projected financial information. Debtors currently earn $9,166.67 per month. Debtors will adjust their budget of expenses such that they will be able to provide $852.67 per month towards the funding of this Plan for the 60-month period following confirmation.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4
## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit 3.

## ARTICLE 5
## DISCHARGE.

**5.1. Discharge.   If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of the Code, and all other debts allowed under section 503 and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of the Code.

## ARTICLE 6
## GENERAL PROVISIONS.

### 6.1.    Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided

15

in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2.   **Binding Effect.**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3.   **Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.   **Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5.   **Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6.   **Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the

proposed modifications after notice and a hearing.

### 6.7.    **Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7
## ATTACHMENTS

The following documents accompany the Plan:

[ ]    Debtor's Assets at Fair Market Value, annexed as Exhibit ____.

[ ]    Debtor's Liabilities, annexed as Exhibit ____.

[X]    Financial forecast for the Debtor, annexed as Exhibit 1.

[ ]    Debtor's most recent financial statements issued before bankruptcy, annexed as Exhibit ___.

[ ]    Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit ____.

[ ]    Summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit ____.

[ ]    Executory Contracts and Unexpired Leases, to be Assumed annexed as Exhibit ___.

[ ]    Executory Contracts and Unexpired Leases to be Assumed and Assigned, annexed as Exhibit ___.

[ ]    Executory Contracts and Unexpired Leases to be Rejected, annexed as Exhibit ___.

[X]    Tables showing the amount of cash on hand as of the Effective Date, and the sources of that cash, annexed as Exhibit 2.

[X]    Liquidation Analysis, annexed as Exhibit 3.

## ARTICLE 8
## DEFINITIONS

**9.1.**    The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2.**    **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3.**    **Administrative Convenience Class:**    A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.**    **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against the Debtors' estate under Chapter 123, Title 28, United States Code.

**9.5**    **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.**    **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or deemed filed pursuant to § 1111(a) of the Code or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.**    **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.**    **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

18

AMENDED SUB V PLAN WITH BLACK-LINED

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

~~Debtor is a guarantor~~Debtors are guarantors of an SBA-guaranteed loan made by Huntington National Bank to Bobby's Lincoln Park, LLC, which operated a restaurant that is no longer in business. Other guarantors of the Huntington National Bank loan to Bobby's Lincoln Park, LLC are the debtors in the related bankruptcy cases of Lucci Restaurant Group, LLC, Case No. 22-03452, and Agim Arifi, Case No. 22-03457.

Pursuant to a judgment entered in Case No. 21-cv-01304 in the United States District Court for the Northern District of Illinois, Bobby's Lincoln Park, LLC was indebted to Huntington National Bank in the amount of $2,379,643.39 as of March 31, 2022.

The guaranty executed by the Debtors in this case, Bashkim and Fatima Arifi, is secured by a mortgage on their residence at 8729 West Stolting Road, Niles, Illinois 60714.

Pursuant to the Subchapter V provisions applicable to mortgages granted to secure business debt on a residence, Debtor proposes, pursuant to section 1190(2) and (3) of the Bankuptcy Code as follows:

As adequate protection, Debtors shall pay to Huntington National Bank~~,~~ monthly ~~for a period,~~ from the Confirmation Date through the date that Huntington receives the net proceeds of ~~18 months~~the sale of Debtors' residence, interest only at the rate of ~~4~~5.0% per annum on the current ~~appraised~~sale value of Debtors' residence as of the date of confirmation, less the value of accrued real estate taxes that are senior to Huntington's mortgage.

~~During that period, Debtors shall seek financing on the residence, equal to and not to exceed 70% of its appraised value. On closing of the financing, Debtors shall pay Huntington National Bank 100% of the net proceeds of financing after closing costs, and in connection therewith, Huntington will release its lien.~~

Within 30 days after Confirmation of the Plan, Debtors shall have sold their residence, pursuant to the terms of this Plan, to their son Betim Arifi and their daughter-in-law Shkqesa Arifi (the "Buyers"), for a purchase price of $630,000. The Buyers will obtain a mortgage in the amount of $425,000. The proceeds of the mortgage, less closing costs and an agreed carve-out amount for the payment of fees to the Trustee (the "Net Proceeds"), shall be paid to Huntington National Bank at the closing of the sale (the "Closing"), together with the proceeds of the Third Party Notes and the assignment of the Buyers' Note, each as defined below, in exchange for the release of Huntington National Bank's lien on the residence. The sale of the residence shall be free and clear of all liens, claims, and encumbrances, including the lien held by Huntington National Bank.

The difference between the purchase price and the amount of the Buyers' mortgage shall be paid by the Buyers to Debtors in the form of a non-negotiable promissory note in the amount of such difference (the "Buyers' Note"), such note to be payable, without interest, in five equal annual installments commencing on the fifth anniversary of the Closing. The Buyers' Note shall be assigned to

2

Huntington National Bank at the Closing.  Notwithstanding such assignment, the Debtors shall retain the right to forgive the Buyers' Note, or any portion thereof.

In addition, the Debtors will pay to Huntington National Bank at the Closing the proceeds of a $75,000 loan to be made to the Debtors by third parties, to be evidenced by Debtors' promissory notes to said third parties in that aggregate amount (the "Third Party Notes").  The Third Party Notes shall not become due and payable until the fifth anniversary of Confirmation and shall bear no interest until after the completion of Debtors' payments required by the plan.

Moreover, the Plan will afford Huntington National Bank the opportunity to make the §1111(b)(2) election so as to treat its secured claim as 100% secured, provided that the terms of payment be adjusted so that the deferred cash payments to be made to Huntington, in aggregate, equal the amount of Huntington's allowed secured claim and have a present value equal to the value of the property.

Moreover, the Plan will afford Huntington National Bank the opportunity to make the §1111(b)(2) election so as to treat its secured claim as 100% secured, provided that the terms of payment be adjusted so that the deferred cash payments to be made to Huntington, in aggregate, equal the amount of Huntington's allowed secured claim and have a present value equal to the value of the property.

Unless it makes the § 1111(b)(2) election, addressed above, the balance of Huntington National Bank's claim against this debtor is a general unsecured claim in the approximate amount of $1,463333,391.11.  That claim, along with an additional $26,516.92 owed to other unsecured creditors on noncontingent, liquidated, undisputed claims, will be paid pro rata from the Debtor's disposable income during the threefive-year term of this Plan, as well as from the liquidation of certain of Debtors' assets, as set forth below.  The contingent, unliquidated claim of Northbrook Bank & Trust Co. in the amount of $380,489.09 is not included here inasmuch as it is a claim on the Debtors' guaranty of business debt owed by non-debtor entities, i.e., Arifi Inc. and Arifi Family, LLC, and is being paid by those entities in the regular course of business.

The Debtors' disposable income during the first three-year term years of the Plan will be as set forth in Debtors' projections that accompany this Plan.  The financial projections for the remaining two years are similar to the information provided for the third year of the Plan.  Debtors proposespropose to act as disbursing agent under the Plan and to make distributions under the Plan on a quarterly basis. If this Plan is not consensual, the Subchapter V Trustee will act as disbursing agent and make such quarterly distributions.

Debtors own certain assets scheduled in Schedule B of their bankruptcy petition.  They propose to liquidate all suchnon-exempt assets except for their automobiles and stock in Arifi, Inc. and Arifi Family LLC, and thereby contribute $115,000 on their Plan, of which approximately $35,000 will be paid to administrative expenses, leaving approximately $80,000 toward immediate payment to general unsecured creditors.

**ARTICLE 1**
**HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR**
3

### 1.1. Nature of the Debtor's Business.

Debtor Bashkim Arifi is a member of Lucci Restaurant Group, LLC, which operates a restaurant in Deerfield, Illinois. He is also a shareholder in Arifi Inc., which operates a restaurant in Glenview, Illinois.

### 1.2. History of Business Operations of the Debtor

Debtor has been engaged in the restaurant business for 27 years. In addition to the failed business operations of Bobby's Lincoln Park, LLC, Debtor has also successfully been engaged in the operation of the restaurants in Deerfield and Glenview. While these restaurants, like all restaurants, were adversely affected by the COVID-19 pandemic, at present the business environment and operations for these restaurants has improved, with reasonable likelihood for enhanced revenue in the future as the pandemic continues to come under better control.

### 1.3 Filing of the Debtor's Chapter 11 Case.

On March 25, 2022, the Debtors filed their voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court for the Northern District of Illinois, Eastern Division. This case has been consolidated for procedural purposes with the companion cases of Debtor's co-guarantors, i.e., Lucci Restaurant Group, LLC, Case No. 22-03452, and Agim Arifi, Case No. 22-03457.

### 1.4. Legal Structure and Ownership.

Debtors are individuals.

### 1.5. Debtors' Assets.

In general, the significant assets of the Debtors include the following:

| Asset | Valuation |
|---|---|
| Residence<br>8729 W Stolting Rd<br>Niles, IL | ~~500~~630,000 |
| 2016 Audi A6<br>2014 Mitsubishi Outlander | 20,000<br>8,000 |
| Bank accounts<br>Securities | 113,000<br>75,000 |

Formatted: Space After: 12 pt

Formatted: Space Before: 0 pt, After: 6 pt

Formatted: Space Before: 6 pt

4

| | |
|---|---|
| Arifi Inc. (37.5%) <br> (operates Glenview restaurant) | 25,000 (going concern value) |
| Arifi Family LLC (50%) <br> (owns Glenview land) | $ 60,000 |
| Lucci Restaurant Group LLC (50%) | 0.00 |
| Retirement Funds | 248,000 (exempt) |

### 1.6.   Debtor's Liabilities.

The Debtors will have administrative claims arising in this Chapter 11 case, estimated not to exceed $35,000.  Their plan proposes to address the secured claim of Huntington National Bank as provided by Subchapter V of Chapter 11 of the Bankruptcy Code, all as set forth above. Huntington National Bank has the right, but not the obligation, to treat its claim as fully secured pursuant to Section 1111(b)(2) of the Bankruptcy Code. If it does not so elect, the balance of Debtor's liabilities to Huntington will be general unsecured. For further details, see Summary of Plan above.

### 1.7.   Events Leading to the Filing of the Bankruptcy Case.

Debtors and the affiliated debtors suffered business reverses characteristic of all restaurants during the COVID-19 pandemic. This case was triggered by Huntington National Bank's aggressive action in the District Court, Case No. 21-cv-01304, seeking and obtaining summary judgment against Bobby's Lincoln Park LLC, the principal obligor on Huntington's loan, which was guaranteed by this Debtor and the debtors in the affiliated cases.  In the complaint for judgment on the guaranties, Huntington has also sought to foreclose against all real estate given as collateral.  As a result, Debtors and their co-obligors have sought relief in this Court under Subchapter V of Chapter 11.

### 1.8.   Significant Events During the Bankruptcy Case.

- Debtor Bashkim Arifi's brother, Agim Arifi, received court authority to sell his residence, and the sale closed on June 14, 2022.  Huntington National Bank was paid pursuant to Court order net proceeds in the amount of $416,252.28.
- Plan negotiations have continued ~~but have not, as yet, resulted~~and are expected to result in a consensual plan.
- Richard Golding has been employed and is serving as Debtors' attorney.
- Mr. Golding has utilized the services of David P. Leibowitz and Linda

5

Green, of Law Offices of David P. Leibowitz, LLC, as "of counsel" to The Golding Law Offices, P.C., to assist him in the preparation of Debtors' Plan.

- Debtors continue to review and revise their budget of income and expenses going forward so as to develop and maintain a predictable and dependable stream of disposable income to fund the Plan.

### 1.9. Projected Recovery of Avoidable Transfers

The Debtors do not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

**Formatted:** Heading 1, Indent: Left: 2.93", Right: 3.16", Space Before: 0 pt, Line spacing: Double

### ARTICLE 2

### THE PLAN

Under the Bankruptcy Code, the Debtor's Plan is required to describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

### 2.1 Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with

that required by the Code. As such, the Plan does not place the following Claims in any class:

>    A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full.  If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense.  Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order.  If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

>    1.    If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided.  This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.  *Debtors are individuals and do not trade in the ordinary course of business*

>    2.    If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense. *No such Administrative Expense exists in this case*

>    3.    Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases.  These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment. *There will be post-petition administrative expenses payable to professionals and to the Trustee*

The following chart lists the Debtors' estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $-0- | N/A |
| Administrative Tax Claims | $-0- | N/A |
| The value of goods received | | |

7

| | | |
|---|---|---|
| in the ordinary course of business within 20 days before the Petition Date | $-0- | N/A |
| Professional fees, as approved by the Bankruptcy Court | $30,000 | Payment upon the later of: (i) Bankruptcy Court approval, or (ii) the Effective Date of the Plan |
| Clerk's Office Fees | $-0- | N/A |
| Other Administrative Expenses | $-0- | N/A |
| Trustee | $5,000 | Payment upon the later of: (i) Bankruptcy Court approval, or (ii) the Effective Date of the Plan |
| TOTAL | $35,000 | |

B.    Priority Tax Claims – NONE

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief. *There are no Priority Tax Claims in this case.*

2.2    **Classes of Claims and Equity Interests.**

A.  Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code.

> Formatted: Font: 12 pt

**Class 1 – Huntington National Bank Allowed Secured Claim.** The only class of secured claims in this case is Class 1, the allowed secured claim of Huntington National Bank. Pursuant to the Subchapter V provisions applicable to mortgages granted to secure business debt on a residence, ~~Debtor proposes~~Debtors propose, pursuant to section 1190(2) and (3) of the Bankruptcy Code, the following treatment of Huntington's claim:

8

As adequate protection, Debtors shall pay to Huntington National Bank, monthly ~~for a period of 18 months,~~ from the Confirmation Date through the date that Huntington receives the net proceeds of the sale of Debtors' residence, interest only at the rate of ~~2.5~~.0% per annum on the current ~~appraised~~sale value of Debtors' residence as of the date of confirmation, less the value of accrued real estate taxes that are senior to Huntington's mortgage.

Within 30 days after Confirmation of the Plan, Debtors shall have sold their residence, pursuant to the terms of this Plan, to their son Betim Arifi and their daughter-in-law Shkqesa Arifi (the "Buyers"), for a purchase price of $630,000. The Buyers will obtain a mortgage in the amount of $425,000. The proceeds of the mortgage, less closing costs and an agreed carve-out amount for the payment of fees to the Trustee (the "Net Proceeds"), shall be paid to Huntington National Bank at the closing of the sale (the "Closing"), together with the proceeds of the Third Party Notes and the assignment of the Buyers' Note, each as defined below, in exchange for the release of Huntington National Bank's lien on the residence. The sale of the residence shall be free and clear of all liens, claims, and encumbrances, including the lien held by Huntington National Bank.

The difference between the purchase price and the amount of the Buyers' mortgage shall be paid by the Buyers to Debtors in the form of a non-negotiable promissory note in the amount of such difference (the "Buyers' Note"), such note to be payable, without interest, in five equal annual installments commencing on the fifth anniversary of the Closing. The Buyers' Note shall be assigned to Huntington National Bank at the Closing. Notwithstanding such assignment, the Debtors shall retain the right to forgive the Buyers' Note, or any portion thereof.

In addition, the Debtors will pay to Huntington National Bank at the Closing the proceeds of an $75,000 loan to be made to the Debtors by third parties, to be evidenced by Debtors' promissory notes to said third parties in that aggregate amount (the "Third Party Notes"). The Third Party Notes shall not become due and payable until the fifth anniversary of Confirmation and shall bear no interest until after the completion of Debtors' payments required by the plan.

Moreover, the Plan will afford Huntington National Bank the opportunity to make the §1111(b)(2) election so as to treat its secured claim as 100% secured, provided that the terms of payment be adjusted so that the deferred cash payments to be made to Huntington, in aggregate, equal the amount of Huntington's allowed secured claim and have a present value equal to the value of the property.

~~During that period, Debtors shall seek financing on the residence, equal to and not to exceed 70% of its appraised value. On closing of the financing, Debtors shall pay Huntington National Bank 100% of the net proceeds of financing after closing costs, and in connection therewith, Huntington will release its lien.~~

~~Moreover, the Plan will afford Huntington National Bank the opportunity to make the §1111(b)(2) election so as to treat its secured claim as 100% secured, provided~~

9

~~that the terms of payment be adjusted so that the deferred cash payments to be made to Huntington, in aggregate, equal the amount of Huntington's allowed secured claim and have a present value equal to the value of the property.~~

Unless it makes the § 1111(b)(2) election, addressed above, the balance of Huntington National Bank's claim against this debtor is a general unsecured claim and will be paid, pro rata, from the Debtor's disposable income during the ~~three~~five-year term of this Plan as well as from the liquidation of certain of Debtors' assets, as set forth below regarding Class 2.

In the event that Debtors are unable to ~~refinance~~close the ~~property within~~sale of the ~~18-month period provided~~residence as described above~~, the failure to so refinance~~ within 30 days after Confirmation, they will ~~constitute a default under this Plan,~~ have 90 days thereafter to sell the residence for fair market value pursuant to and ~~unless~~in agreement with Huntington ~~agrees otherwise in writing to extend, and if Debtors fail to so sell the~~ ~~18-month period, Huntington may upon~~residence within ~~default proceed to exercise any or all of its state law rights and remedies with respect~~90 days, they will vacate the premises and will consent to ~~the property.~~ judgment in Huntington's prepetition foreclosure action, and the confirmation order will so provide.

    The following chart summarizes the Plan's proposed treatment of Class 1, containing Huntington National Bank's secured claim:

Formatted: Body Text, Indent: Left: 0.44", First line: 0.5", Right: 0.69", Space Before: 0.05 pt, Line spacing: single

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | *Secured claim of:* Huntington National Bank<br><br>Collateral description = 8729 W. Stolting Rd, Niles, IL<br><br>Allowed Secured Amount = $~~599~~630,000 (unless § 1111(b)(2) election is made) | No | ~~impaired~~Impaired | interest only at ~~2.5~~.0% per annum ~~for 18 months, while Debtors obtain financing in an amount equal to and not to exceed 70% of value~~<br><br>~~upon financing, 100% of net proceeds to be paid on secured claim,~~ from the Confirmation Date through the date that Huntington receives, in exchange for the release of its lien, the proceeds of the Buyers' mortgage, less closing costs and an agreed carve-out amount for the payment of fees to the Trustee, together with the $75,000 in proceeds of the Third Party Notes and the assignment of the Buyers' Note, each to be delivered at Closing |

Formatted: Right: 0.13"

Formatted: Indent: Left: 0.07", Right: 0.13", Line spacing: single, Tab stops: Not at 1.13"

B.  Classes of Priority Unsecured Claims – NONE

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment. **There are no priority claims under §§ 507(a)(1), (4), (5), (6), ~~and~~or (7) of the Code in this case.**

C.  Classes of General Unsecured Claims

**Class 2 – General Unsecured Claims.**  General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.  There are approximately $1,~~489~~359,908.03 in general unsecured Claims in this case (assuming that Huntington National Bank does not make the § 1111(b)(2) election described above).

Debtors shall make an initial distribution towards payments under the plan in the amount of $115,000 from liquidation of cash deposits and securities, of which approximately $35,000 will be paid to administrative expenses, leaving approximately $80,000 toward immediate payment to general unsecured creditors.

Debtors shall thereafter distribute additional payments totaling $~~24,444~~51,160 to creditors holding general unsecured claims, payable $~~4742~~,558 quarterly for the ~~first 18 months~~term of ~~the plan and $3,600 quarterly for the remaining 18 months, those sums~~this Plan, that sum being equal to the Debtors' projected disposable income over the ~~three~~five-year period subsequent to confirmation, net of the interest payments to be made to Huntington ~~during the first 18 months of the plan~~.  Such payments shall be distributed to unsecured creditors holding allowed general unsecured claims pro rata, by the ~~Debtor~~Debtors if the Plan is confirmed consensually, and by the Subchapter V Trustee, after deduction of proper compensation to such Trustee, if the Plan is confirmed without the consent of the creditors.  If the Plan is consensual, the ~~Debtor~~Debtors will be discharged upon confirmation of the Plan. If the Plan is not consensual, the ~~Debtor~~Debtors will be discharged upon completion of all payments required by the Plan.  **Unsecured creditors are impaired by the Plan.**

If Huntington National Bank does not make the § 1111(b)(2) election, it will have a general unsecured claim which, along with other unsecured creditors, will share pro rata from this fund under the Plan.

In the event that Huntington National Bank makes the § 1111(b)(2) election described above, it will not have a general unsecured claim, and the remaining unsecured creditors will share pro rata from the distribution funds described above.

The following chart summarizes the Plan's proposed treatment of Class 2, which contains general unsecured Claims against the Debtor (and assumes that Huntington National Bank does not make the § 1111(b)(2) election):

> Formatted: Normal, Left, Indent: Left:  0", First line:  0", Right:  0", Space Before:  0 pt

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|

| 2 | General Unsecured Class | impaired | Initial payment of $80,000 from liquidation of cash deposits and securities |
| | | | Quarterly ~~Pmt for the 1st 18 months = $474~~ |
| | | | ~~Quarterly Pmt for the remaining 18 months = $3,600~~Pmts = $2,558 |
| | | | Pmts begin in the first quarter after confirmation |
| | | | Pmts end ~~2~~5 years after confirmation |
| | | | Estimated percent of claims paid = ~~7.01~~9.64% |

D.  Class[es] of Equity Interest Holders - NONE

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company ("LLC"), the Equity Interest holders are the members.  ***In this case, there are no Equity Interest holders, as the Debtors are individuals.***

**2.3.**    <u>Estimated Number and Amount of Claims Objections. (None anticipated)</u>

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. ***The Debtor does not at this time anticipate filing any objections to Claims.***

**2.4.**    <u>Treatment of Executory Contracts and Unexpired Leases</u>

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.    ***There are no executory contracts or unexpired leases implicated in the Debtor's Plan.***

**2.5.**    <u>Means for Implementation of the Plan.</u>

On Confirmation of the Plan, all property of the ~~Debtor~~Debtors, tangible and intangible, including, without limitation, licenses, furniture, fixtures, and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the ~~Debtor~~Debtors. The ~~Debtor expects~~Debtors expect to have sufficient cash on hand to make the payments required on the Effective Date.

Debtors will maintain an account from their monthly income in which they shall deposit a sum not less than $~~1,200~~852.67 per month during the term of this Plan so as to fund the payments required by the Plan. If the Trustee is still serving, ~~Debtor~~Debtors will disburse the required funds to the Trustee who may then disburse the funds to creditors in accordance with the terms of the plan. Such payments will be made pursuant to Section 2.6 of the Plan.

In addition, Debtors own certain assets scheduled in Schedule B of their bankruptcy petition. Debtors will liquidate all ~~such~~non-exempt assets except for their automobiles and stock in Arifi, Inc. and in Arifi Family LLC and thereby contribute $115,000 on their Plan, of which approximately $35,000 will be paid to administrative expenses, leaving approximately $80,000 toward immediate payment to general unsecured creditors.

With respect to the Huntington National Bank secured claim, Debtors shall pay to Huntington~~,~~ monthly ~~for a period,~~ from the Confirmation Date through the date that

**Formatted:** Right: 0.71", Space Before: 4.5 pt, After: 12 pt, Tab stops: 6.43", Left

14

Huntington receives the net proceeds of 18 monthsthe sale of Debtors' residence, interest only at the rate of 2.5.0% per annum on the current appraisedsale value of Debtors' residence as of the date of confirmation, less the value of accrued real estate taxes that are senior to Huntington's mortgage. During that 18-month period, Debtors shall seek financing on the residence. On closing of the financing, Debtors shall pay Huntington National Bank 100% of the net proceeds of financing after closing costs.

Within 30 days after Confirmation of the Plan, Debtors shall have sold their residence, pursuant to the terms of this Plan, to their son Betim Arifi and their daughter-in-law Shkqesa Arifi (the "Buyers"), for a purchase price of $630,000. The Buyers will obtain a mortgage in the amount of $425,000. The proceeds of the mortgage, less closing costs and an agreed carve-out amount for the payment of fees to the Trustee (the "Net Proceeds"), shall be paid to Huntington National Bank at the closing of the sale (the "Closing"), together with the proceeds of the Third Party Notes and the assignment of the Buyers' Note, each as defined below, in exchange for the release of Huntington National Bank's lien on the residence. The sale of the residence shall be free and clear of all liens, claims, and encumbrances, including the lien held by Huntington National Bank. The difference between the purchase price and the amount of the Buyers' mortgage shall be paid by the Buyers to Debtors in the form of a non-negotiable promissory note in the amount of such difference (the "Buyers' Note"), such note to be payable, without interest, in five equal annual installments commencing on the fifth anniversary of the Closing. The Buyers' Note shall be assigned to Huntington National Bank at the Closing. Notwithstanding such assignment, the Debtors shall retain the right to forgive the Buyers' Note, or any portion thereof. In addition, the Debtors will pay to Huntington National Bank at the Closing the proceeds of an $75,000 loan to be made to the Debtors by third parties, to be evidenced by Debtors' promissory notes to said third parties in that aggregate amount (the "Third Party Notes"). The Third Party Notes shall not become due and payable until the fifth anniversary of Confirmation and shall bear no interest until after the completion of Debtors' payments required by the plan.

2.6.
ayments.

P

Formatted: Body Text, Justified, Right: 0.71", Space Before: 4.5 pt, After: 12 pt, No bullets or numbering, Tab stops: 6.43", Left + Not at 1.51" + 1.51"

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Trustee pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c), the DebtorDebtors shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

### 2.7.2.6. Post-Confirmation Management – Not Applicable

15

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|------|----------|--------------|
| N/A | N/A | N/A |
| | | |

### 2.8.2.7. Tax Consequences of the Plan.

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

Debtor does not anticipate tax consequences as a result of this plan as any debt forgiven will not be considered income to the Debtor under the applicable provisions of the Internal Revenue Code.

### 2.9.2.8. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan

Debtor has provided projected financial information for the first three years of the Plan. Those projections are listed in Exhibit 1. The financial projections for the remaining two years are similar to the information provided for the third year of the Plan.

Formatted: Justified

### ARTICLE 3
### FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1.    Ability to Initially Fund Plan.

The Debtor believes that the Plan will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as Exhibit 2.

### 3.2.    Ability to Make Future Plan Payments And Operate Without Further Reorganization.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

16

The Debtors have provided projected financial information. Debtors currently earn $9,166.67 per month.  Debtors will adjust their budget of expenses such that they will be able to provide $~~1,200~~852.67 per month towards the funding of this Plan for the ~~36~~60-month period following confirmation.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

**ARTICLE 4**
**LIQUIDATION ANALYSIS.**

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation.  A liquidation analysis is attached hereto as Exhibit 3.

**ARTICLE 5**
**DISCHARGE.**

**5.1.  Discharge.  If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of the Code, and all other debts allowed under section 503 and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of the Code.

**ARTICLE 6**
**GENERAL PROVISIONS.**

**6.1.    Title to Assets.**

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided

in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2.  Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3.  Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.  Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5.  Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6.  Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the

Formatted: Font: 10 pt

Formatted: Body Text, Line spacing: Multiple 0.06 li

proposed modifications after notice and a hearing.

### 6.7.    Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7
## <u>ATTACHMENTS</u>

The following documents accompany the Plan:

| | |
|---|---|
| [ ] | Debtor's Assets at Fair Market Value, annexed as Exhibit ____. |
| [ ] | Debtor's Liabilities, annexed as Exhibit ____. |
| [X] | Financial forecast for the Debtor, annexed as Exhibit 1. |
| [ ] | Debtor's most recent financial statements issued before bankruptcy, annexed as Exhibit ___. |
| [ ] | Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit ___. |
| [ ] | Summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit ___. |
| [ ] | Executory Contracts and Unexpired Leases, to be Assumed annexed as Exhibit ___. |
| [ ] | Executory Contracts and Unexpired Leases to be Assumed and Assigned, annexed as Exhibit ___. |
| [ ] | Executory Contracts and Unexpired Leases to be Rejected, annexed as Exhibit ___. |
| [X] | Tables showing the amount of cash on hand as of the Effective Date, and the sources of that cash, annexed as Exhibit 2. |
| [X] | Liquidation Analysis, annexed as Exhibit 3. |

Formatted: Font: 10 pt

Formatted: Body Text, Line spacing: Multiple 0.06 li

## ARTICLE 8
## DEFINITIONS

**9.1.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2. Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3. Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4. Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against the Debtors' estate under Chapter 123, Title 28, United States Code.

**9.5 Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6. Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or deemed filed pursuant to § 1111(a) of the Code or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7. Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8. Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

22

Formatted: Font: 10 pt

Formatted: Body Text, Line spacing:  Multiple 0.06 li

**9.9.     Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.     Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.     Bankruptcy Court**: The United States Bankruptcy Court for the Northern District of Illinois.

**9.12.     Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.13.     Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.     Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Bashkim Arifi and Fatima Arifi are the Debtors-in-Possession.

**9.15     Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured." 11 U.S.C. §101(5).

**9.16.     Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.     Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.     Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

Formatted: Font: 10 pt

Formatted: Body Text, Line spacing:  Multiple 0.06 li

**9.19.    Confirmation Hearing**: The hearing to be held on _____, 2022 to consider confirmation of the Plan.

**9.20.    Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.    Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.    Debtor** and **Debtor-in-Possession**:  Bashkim Arifi and Fatima Arifi, the debtors-in-possession in this Chapter 11 Case.

**9.23.    Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.    Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.    Effective Date**: The date that is 30 calendar days following the date on which the order confirming this Plan becomes a Final Order.

**9.26.    Equity Interest**: An ownership interest in the Debtor.

**9.27.    Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.    Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.    IRC**: The Internal Revenue Code

**9.30.    Petition Date**:  March 25, 2022, the date the chapter 11 petition for relief was filed.

**9.31.    Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.    Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

Formatted: Font: 10 pt

Formatted: Body Text, Line spacing:  Multiple 0.06 li

**9.33.**  **Reorganized Debtor**: The Debtor after the Effective Date.

**9.34.**  **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.**  **Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.**  **Trustee**:  Matthew Brash, the trustee appointed pursuant to 11 U.S.C. §1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.**  **Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

BASHKIM ARIFI and FATIMA ARIFI, Debtors and Debtors-in-Possession

By:  _/s/ Richard N. Golding_
                  One of Their Attorneys

Richard N. Golding (ARDC #6299876)
The Golding Law Offices, P.C.
500 N. Dearborn St., 2nd Floor
Chicago, IL 60654
T: (312) 832-7885
F: (312) 755-5720
rgolding@goldinglaw.net

Formatted: Font: 10 pt

Formatted: Body Text, Line spacing: Multiple 0.06 li

EXHIBIT 2 – **Cash on hand on the Effective Date**

Cash on hand on the Effective Date:                    $ 188,000

Less –

Amount of Administrative Expenses payable
on effective date of Plan                                              $35,000

Amount of statutory costs and charges                    $ 0

Amount of cure payments for executory contracts    $ 0

Other Plan Payments due on Effective Date              $ 80,000
        or within 30 days thereafter

        Balance after paying these amounts…… ……….$ 73,000

The sources of the cash the Debtor will have on hand by the Effective Date are estimated
as follows:

        $188,000        Cash in the Debtor's bank accounts

### EXHIBIT 3 – **Liquidation Analysis**
[Pursuant to Section 1190(1)(B) of the Bankruptcy Code]

*Debtor's Estimated Liquidation Value of Assets*

**Assets**

| | |
|---|---|
| a. Cash on hand | $ 113,000 |
| b. Accounts receivable | $0.00 |
| c. Inventory | $0.00 |
| d. Office furniture & equipment | $0.00 |
| e. Machinery & equipment | $0.00 |
| f. Automobiles | 28,000 ($2,400 exempt) |
| g. Building & Land | $~~450~~560,000 (~~500~~630,000 less commission, taxes, prorations, transfer taxes) (30,000 exempt) |
| h. Customer list | $0.00 |
| i. Fidelity | $75,000 ($8,000 exempt) |
| j. Arifi, Inc. and Arifi Family, LLC | $35,000 |
|    (fractional interests difficult to liquidate, subject to liens and claims at enterprise level – value indeterminate, less expense for liquidating fractional interests) | |
| k. Lucci Restaurant Group LLC | $0.00 |
| l. Lawsuits or other claims against third-parties | $0.00 |
| m. Other intangibles (such as avoiding powers actions) | $0.00 |
| n. Retirement funds | $248,000 (exempt) |
| *Total Assets at Liquidation Value* | $~~949~~1,059,000 |

| | |
|---|---|
| **Less:** | |
| Secured creditors' recoveries (net of homestead exemption) | $~~420~~530,000 |
| **Less:** | |
| Chapter 7 trustee and accountant fees and expenses | $80,000 |
| **Less:** | |
| Chapter 11 Administrative Expenses | $35,000 |
| **Less:** | |
| Priority claims, excluding Administrative Expense claims | $0.00 |
| **Less:** | |
| Reserve for estate's liability for income taxes resulting from sale of real estate | $40,000 |
| **Less:** | |
| Debtor's claimed exemptions | $288,400 |
| (1) Balance for unsecured claims | $ $ 85,600 |
| (2) Total dollar amount of unsecured claims | $1,~~489~~359,908.03 |

| | |
|---|---|
| *Perecentage of Claims Which Unsecured Creditors Would Receive or Retain in a Chapter 7 Liquidation* | ~~5.75~~ 6.29% |
| *Perecentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan* | ~~7.01~~ 9.64% |

28